UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| VICTOR RAY BURTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10CV165 SNLJ |
| | ) | |
| STEPHANIE KASTINGS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motion for summary judgment and motion to strike plaintiff's supplemental responses to defendants' motion and statement of undisputed facts. Responsive pleadings have been filed and the matter is now ripe for disposition. For the following reasons, the Court will deny the motion to strike and grant the motion for summary judgment.

**I.  Background**

Plaintiff Victor Ray Burton filed this 42 U.S.C. § 1983 claim against defendants who were on the medical staff at Southeast Correctional Center (SECC) in Charleston, Missouri, when plaintiff was incarcerated at that facility. Plaintiff complains of a delay in medical treatment from the date he suffered an injury to his hand, November 13, 2009, to the date of surgery on his hand, February 4, 2010. Plaintiff alleges that the actions and inactions of the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Further, he alleges that he has been permanently deformed and

partially disabled as a direct result of the defendants' deliberate indifference to his serious medical needs.

Plaintiff filed his original complaint against defendants Sgt. Bryan Hoskins, Stephanie Kastings, Terry Mitchell, Felicia Dodge, Heather Annesser, Amanda Hill, Amanda Gibson, and Dr. Michael Hakala. Defendants Sgt. Bryan Hoskins, Felicia Dodge, Heather Annesser, and Amanda Hill were dismissed by the Court upon motions of the defendants. Plaintiff filed an amended complaint, which added Terri Martinez as a defendant. As the case stands at this time, the defendants are Amanda Gibson, Dr. Michael Hakala, Stephanie Kasting, Terry Mitchell, and Terri Martinez. Defendants Gibson, Hakala, Kasting, and Mitchell filed a motion for summary judgment. Defendant Martinez, who was served after the motion was filed, is not a party to the motion.

In their motion for summary judgment, defendants argue that they are entitled to judgment as a matter of law because plaintiff is unable to present evidence that they acted with deliberate indifference to plaintiff's serious medical needs or that any delay in treatment of plaintiff's fractured hand caused or had a detrimental effect. They contend that the medical records and undisputed facts demonstrate that plaintiff was provided with appropriate medical care for his hand injury.

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324.

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The court is required, however, to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion. Local Rule 4.01(E) provides:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The

opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. ***All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party***.

(emphasis added). Even so, where a plaintiff fails to respond adequately to a motion for summary judgment, the court should not treat such a non-response as sufficient to dispose of the motion. *Lowry v. Powerscreen USB, Inc.*, 72 F.Supp.2d 1061, 1064 (E.D. Mo. 1999) (citing *Canada v. Union Electric Co.*, 135 F.3d 1211, 1213 (8th Cir. 1997). "Courts should proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken." *Id.*

## III. Facts

In his response to the motion, plaintiff did not dispute the defendants' statement of facts with specific references to portions of the record as required by Local Rule 4.01(E) and Federal Rule of Civil Procedure 56(c)(1). As a result, the defendants' facts are deemed admitted. The undisputed facts are set forth below.

Plaintiff, now an inmate at Tipton Correctional Center in Tipton, Missouri, claims that when he was confined at SECC, the defendants failed to provide him with timely and necessary medical treatment for his broken hand. On Friday, November 13, 2009, plaintiff was involved in a physical conflict with another inmate. Correctional officers broke up the altercation and delivered plaintiff to a segregated housing unit for confinement where he had an initial evaluation by medical staff. During the initial evaluation, plaintiff complained that he thought he might have broken his hand. Upon examination by Nurse Felicia Dodge, it was noted that plaintiff's right outer hand was

4

swollen and tender to touch. Plaintiff was confined to the segregation unit from November 13, 2009 through December 2, 2009.

Plaintiff filed a medical service request on December 4, 2009 complaining of dry skin. On December 7, 2009, plaintiff was seen by Nurse Amanda Gibson regarding his complaint of dry skin. On December 8, 2009, plaintiff was seen in response to a medical service request he filed on December 7, 2009 in which he requested a hand and finger assessment. At this nurse encounter, plaintiff complained that he thought he "sprained" his wrist or "broke it" about a month ago and he "was supposed to get an x-ray but never heard anything." Plaintiff further complained that "it still hurts" and he "can't put pressure on it or lift heavy items." Plaintiff was examined by Nurse Amanda Ulmer and her assessment was that he had a sprain. Plaintiff was directed to take Ibuprofen 200 mg tablets for pain. He was further instructed to return to sick call in two days if he was not better.

On January 5, 2010, plaintiff had x-rays on his right hand and wrist. The x-rays revealed that the component bones of the wrist appeared intact without fracture or dislocation. There was an incidental finding of fracture involving the base of the fifth metacarpal. There was some callous formation at the fracture site and the fracture fragments appeared separated. The osseous structures of the hand were otherwise grossly intact. The impression was that the hand x-ray revealed a healing intra-articular fracture at the base of the fifth metacarpal.

On January 6, 2010, Dr. Michael Hakala examined plaintiff regarding his complaints that his right hand was swollen. Plaintiff explained he had been in a fight in

5

November and after the fight his right hand swelled.  Dr. Hakala's assessment was a fracture at the base of the fourth metacarpal on the right hand.  Dr. Hakala's plan was to prescribe Naproxen 500mg tablets for the pain and to request an orthopedic consultation.  Dr. Hakala requested a referral for an orthopedic consultation on January 6, 2010.  Dr. Hakala requested the referral because plaintiff had pain in his right hand and a weak grip due to the pain.  Plaintiff also exhibited limited dorsi and palmar flex because of the pain.  Dr. Hakala's referral request was approved on January 6, 2010.

Plaintiff filed a medical service request on January 20, 2010 regarding questions about his medications. On January 21, 2010, in response to his medical service request, plaintiff had a nurse encounter appointment with Terry Mitchell.  At the appointment, plaintiff complained that his right hand was still swollen and hurt and that he had an x-ray and the doctor stated his hand was broken.  Plaintiff further complained that the medication he was taking for the pain was not working and wanted different pain medication.  Plaintiff described the pain as a 7 or 8 out of a 1-10 pain scale.  Nurse Mitchell noted that he had an edema to the outer part of his hand, generally the palm area.  Nurse Mitchell's plan was to refer plaintiff to the doctor for examination.

On January 22, 2010, plaintiff saw Dr. Flood for his orthopedic consultation.  Plaintiff complained that he had pain in his hand with decreased ability for grip strength and use of his hand.  Dr. Flood's assessment was plaintiff had right hand fifth metacarpal fracture at the base and decreased grip strength. After discussion of various treatment options, plaintiff chose to proceed with open reduction internal fixation of the malunion.

Dr. Flood recommended immediate surgery. Dr. Flood reported his recommendation to Dr. Hakala on January 25, 2010.

On January 28, 2010, Dr. Hakala requested a referral to Dr. Flood for an open reduction internal fixation surgery for the fracture in his hand. The referral was approved on January 29, 2010. On February 4, 2010, Dr. Flood performed an open reduction internal fixation of the right fifth metacarpal on plaintiff's right hand.

Plaintiff submitted his own affidavit setting forth additional facts. His affidavit set forth the following facts. When Nurse Dodge examined plaintiff on November 13, 2009, she noted trauma to his hand, gave him an ice bag, and told him that she would place a request for him to see the doctor. Plaintiff complained about his hand to Nurse Heather Annesser that evening when she was making rounds. Nurse Annesser noticed the swelling, gave him an ace bandage and ice bag, and told him she would put in a request for him to see the doctor.

Plaintiff complained for the next three days to Nurses Dodge, Mitchell, and Annesser that his hand was hurting and he was in pain. Each nurse's response was that she would see what she could do and he should fill out a medical service request. On November 17, 2009, plaintiff completed a medical service request seeking an x-ray for a broken hand.[1] Plaintiff continued to complain and fill out medical service requests but nothing was done. When plaintiff was released from segregation he filled out another medical service request for the same reason, and the "pain progressed into his wrist."

---

[1] The Court notes that plaintiff provided a copy of the medical service request as an exhibit. It was not included in the medical records submitted by defendants.

On December, 17, 2009, plaintiff had a nurse encounter with Nurse Ulmer who gave him a box of pain pills and told plaintiff she would make a request for him to see the doctor.[2] On December 17, 2009, plaintiff had a nurse encounter with Nurse Gibson for an unrelated reason. At that time, plaintiff asked Nurse Gibson about pain medication for his hand. Nurse Gibson told plaintiff that she could not give him any pain medication at that time because he could only be given pain medication once every thirty days.

On January 4, 2012, plaintiff wrote to Stephanie Kasting informing her that it had been almost two months since he thought he had broken his hand and his hand had not been x-rayed despite his numerous requests. On January 5, 2010, plaintiff's hand was x-rayed. On January 6, 2010, plaintiff saw Dr. Hakala who confirmed that plaintiff's hand was broken. Dr. Hakala told plaintiff he was sending him to a specialist because it was possible plaintiff would need pins and screws to repair the break. On February 4, 2010, plaintiff underwent surgery to repair the break. Plaintiff alleges that "[d]ue to the long delay, [he] has been disfigured in his right hand."

## IV. Discussion

### A. Motion to Strike

After defendants filed their reply, plaintiff filed two supplemental documents, a response to defendants' motion and a response to defendants' statement of undisputed facts. The documents were plaintiff's attempt to rectify procedural issues in his prior filings that were raised by defendants in their reply. Defendants filed a motion to strike

---

[2] Based on the records provided by plaintiff and defendants, this visit was on December 8, 2009.

8

the documents on the basis that they were untimely filed. This Court has reviewed plaintiff's supplemental documents and finds that the documents do not offer any significant new evidence or arguments. Although plaintiff makes some effort to comply with Local Rule 4.01 (E) and Federal Rule of Civil Procedure 56(c)(1), the result is the same and defendants' facts remain undisputed. The Court finds that there is no harm or prejudice to defendants by the filing of the supplemental documents and will deny the motion to strike.

### B. Motion for Summary Judgment

Plaintiff claims that the defendants were deliberately indifferent to his serious medical needs based on the delay in treatment for his broken hand. Defendants maintain that there is no evidence that defendants were deliberately indifferent to a serious medical need or that any delay in treatment of plaintiff's fractured hand caused or had a detrimental effect. Further, defendants maintain that the medical records and undisputed facts demonstrate that plaintiff was provided with appropriate medical care for his hand injury. For these reasons, defendants contend that they are entitled to judgment as a matter of law in their favor.

Deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "'Serious medical need' has been defined as a medical need which 'has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995) (quoting

*Johnson v. Busby,* 953 F.2d 349, 351 (8th Cir. 1991); *see also Simmons v. Cook*, 154 F.3d. 805, 807-08 (8th Cir. 1997) (quoting *Moore v. Jackson*, 123 F.3d. 1082, 1086 (8th Cir. 1997) ("A medical need is serious if it is obvious to the layperson or supported by medical evidence.")). "To show deliberate indifference, [a plaintiff ] must prove an objectively serious medical need and that prison officers knew of the need but deliberately disregarded it." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). "The subjective inquiry must show a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Id.* (citing *Olson v. Bloomberg,* 339 F.3d 730, 736 (8th Cir. 2003)). "Knowledge of risk may be inferred from the record." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). "Whether a prison's medical staff deliberately disregarded the needs of an inmate is a fact-intensive inquiry." *Nelson v. Shuffman*, 603 F.3d 439, 448 (8th Cir. 2010). "The inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Nelson*, 603 F.3d at 448.

An inmate alleging constitutionally inadequate medical care *due to delay* in medical care must show both that (1) the deprivation alleged was objectively serious; and (2) the defendant knew of the medical need but was deliberately indifferent to it. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006); *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). "Intentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed." *Gordon*, 454 F.3d at 862 (citing *Plemmons v. Roberts,* 439 F.3d 818, 823

(8th Cir. 2006)). When an "inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, 'the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). "To establish this effect, the inmate 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997). Additionally, the Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish. *See Jenkins v. City of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009).

In this case, the undisputed facts show that plaintiff had a fracture in his right hand. The Eighth Circuit has held that a fractured hand is a serious medical condition. *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *see also McCranie v. Larkins*, 4:10CV312 CAS, 2012 WL 871824, at *6 (E.D. Mo. March 14, 2012). Therefore, the Court finds that plaintiff has presented evidence of a serious medical condition. However, there is no evidence of deliberate indifference to plaintiff's condition by the defendants.

The facts of this case are indistinguishable from the facts in *Johnson v. Hamilton*. *Johnson* also involved a fractured hand and an alleged delay in treatment involving an x-ray and surgery. *Johnson*, 452 F.3d at 971. There, the plaintiff was involved in an altercation with corrections officers. *Id.* After the altercation, the plaintiff was examined by a nurse and was treated for skin abrasions. *Id.* Six days later, the plaintiff submitted his first medical service request complaining of pain in his hand and neck and requesting

11

x-rays of those areas. *Id.* Eleven days after the altercation, he was examined by a different nurse, who gave him Ibuprofen and referred him to a physician. *Id.* The plaintiff testified that at the time, the nurse told him that it was likely his finger was fractured. *Id.* Approximately one month later, the plaintiff submitted another medical service request and was seen the same day by a physician, who ordered an x-ray and prescribed additional pain medication. *Id.* An x-ray of the hand was not taken until two months after the injury, and more than a month after the nurse expressed the belief that she thought the finger was broken. *Id.* The x-ray revealed a fracture in one of plaintiff's finger. *Id.* Based on these facts, the Eighth Circuit concluded that the medical defendants were entitled to judgment as a matter of law, because the plaintiff "has presented no evidence that the medical personnel deliberately disregarded [serious medical] needs." *Id.* at 973. Further, the Court held that plaintiff "has presented no evidence [ ] that [the] delay was the result of anything other than negligence." *Id.* And "[m]ere negligence does not rise to a constitutional violation." *Id.* (citing *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

Here, as in *Johnson*, the undisputed facts show that plaintiff was examined by a nurse after the altercation, his hand was examined at a subsequent nurse encounter, and he was given pain medication for his complaints of pain. Subsequently, plaintiff's hand was x-rayed at his request. The x-ray revealed a fracture and surgery was successfully performed on his hand by an orthopedic specialist. As in *Johnson*, this Court finds that there is no evidence that the medical defendants deliberately disregarded plaintiff's serious medical needs, nor has plaintiff offered "verifying medical evidence" to establish

12

any detrimental effect of delay in medical treatment. *See also McCranie-El v. Larkins*, 4:10CV312 CAS, 2012 WL 871824 (E.D. Mo. March 14, 2012) (finding *Johnson* to be controlling on plaintiff's claim of delay in diagnosis and treatment of hand injury and granting summary judgment in favor of medical defendants). As a result, the defendants are entitled to judgment as a matter of law with regard to plaintiff's claim that they delayed or failed to provide medical treatment for his injured hand.

V. **Conclusion**

In sum, this Court finds that the defendants have shown that they are entitled to summary judgment as to plaintiff's claim against them for failure to provide adequate medical care. Even under plaintiff's version of the facts, he has not established that defendants were deliberately indifferent to his serious medical needs or that any delay in treatment caused or had a detrimental effect. Plaintiff was provided with treatment for the fracture in his hand and any delay in that treatment does not rise to the level of deliberate indifference.

Finally, the Court notes that there is a claim remaining against defendant Terri Martinez, who was added by the first amended complaint and served after the motion for summary judgment was filed by defendants Gibson, Kasting, Mitchell, and Dr. Hakala. If defendant Martinez would like to file a motion for summary judgment, she shall do so within ten days. Otherwise, this matter will be set for trial.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to strike plaintiff's response to defendants' motion for summary judgment and plaintiff's response to defendants'

statement of undisputed facts (#87) filed by defendants Amanda Gibson, Dr. Michael Hakala, Stephanie Kasting, and Terry Mitchell is **DENIED**.

**IT IS FURTHER ORDERED** that the motion for summary judgment (#73) filed by defendants Amanda Gibson, Dr. Michael Hakala, Stephanie Kasting, and Terry Mitchell is **GRANTED**. A separate Judgment in favor of those defendants will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendant Terri Martinez shall file a motion for summary judgment within ten days or this matter will be set for trial. Defendant Martinez may file a motion for summary judgment adopting the record of the defendants currently before the Court on this motion and may file any supplemental arguments or documents in support of her motion. Plaintiff shall have twenty-one days thereafter to file a response and may adopt his response and evidentiary submissions in the record before the Court on this motion. Defendant Martinez shall have seven days thereafter to file a reply.

Dated this 18th day of March, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE