UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| VICTOR RAY BURTON, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:10CV165 SNLJ |
| | ) | |
| STEPHANIE KASTINGS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the sole remaining defendant's motion for summary judgment. Responsive pleadings have been filed and the matter is now ripe for disposition. For the following reasons, the Court will grant the motion for summary judgment.

**I.  Background**

Plaintiff Victor Ray Burton filed this 42 U.S.C. § 1983 claim against defendants who were on the medical staff at Southeast Correctional Center (SECC) in Charleston, Missouri, when plaintiff was incarcerated at that facility. Plaintiff complains of a delay in medical treatment from the date he suffered an injury to his hand, November 13, 2009, to the date of surgery on his hand, February 4, 2010. Plaintiff alleges that the actions and inactions of the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Further, he alleges that he has been permanently deformed and partially disabled as a direct result of the defendants' deliberate indifference to his serious medical needs.

Plaintiff filed his original complaint against defendants Sgt. Bryan Hoskins, Stephanie Kastings, Terry Mitchell, Felicia Dodge, Heather Annesser, Amanda Hill, Amanda Gibson, and Dr. Michael Hakala.  On motions of defendants Hoskins, Dodge, Annesser, and Hill, they were dismissed by the Court.  Plaintiff filed an amended complaint, which added Tammi Martinez as a defendant.  Defendants Gibson, Hakala, Kasting, and Mitchell filed a motion for summary judgment, which was granted by the Court on March 18, 2014.  Defendant Martinez, who was served after that motion was filed, was not a party to the motion.  Thereafter, Martinez filed the instant motion.

In her motion, Martinez argues she is entitled to judgment as a matter of law because plaintiff is unable to present evidence that she acted with deliberate indifference to plaintiff's serious medical needs or that any delay in treatment of plaintiff's fractured hand caused or had a detrimental effect.  She contends that the medical records and undisputed facts demonstrate that plaintiff was provided with appropriate medical care for his hand injury.

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden is on the moving party.  *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts.

2

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324.

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000). The court is required, however, to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

## III.  Facts

Based on defendant's statement of uncontroverted material facts, plaintiff's statement of material facts, and the responses thereto, along with the plaintiff's medical records and other records before this Court, the undisputed material facts are set forth below.

On November 13, 2009, plaintiff was involved in a physical conflict with another inmate. Correctional officers broke up the altercation and delivered plaintiff to a segregated housing unit for confinement where he had an initial evaluation by medical staff. During the initial evaluation, plaintiff expressed concern that he might have broken

his hand. Upon examination by Nurse Felicia Dodge, it was noted that plaintiff's right outer hand was swollen and tender to touch. On November 17, 2009, plaintiff submitted a medical service request for "xray broken hand." Plaintiff was seen by Nurse Amanda Ulmer on November 18, 2008 in response to that medical service request. Plaintiff was confined to the segregation unit from November 13, 2009 through December 2, 2009. During that time plaintiff's injured hand was not x-rayed and he was not examined by a physician.

Plaintiff filed a medical service request on December 4, 2009 complaining of dry skin. On December 7, 2009, plaintiff was seen by Nurse Amanda Gibson regarding his complaint of dry skin. Plaintiff filed a medical service request on December 6, 2009 for "hand/wrist – hurt 3 weeks ago." That request was reviewed on December 7, 2009 by Nurse Tammi Martinez and referred for a nurse sick call. On December 8, 2009, plaintiff was seen in response to that medical service request. At that time, plaintiff complained that he thought he "sprained" his wrist or "broke it" about a month ago and he "was supposed to get an x-ray but never heard anything." Plaintiff further complained that "it still hurts" and he "can't put pressure on it or lift heavy items." Plaintiff was examined by Nurse Ulmer and her assessment was that he had a sprain. Plaintiff was directed to take Ibuprofen 200 mg tablets for pain. He was further instructed to return to sick call in two days if he was not better.

On January 4, 2010, plaintiff wrote the director of nursing, Stephanie Kasting, complaining that his hand was broken and he had not received medical attention. On January 5, 2010, plaintiff was seen by Nurse Gibson, who told him that he was scheduled

4

for an x-ray. On that date, plaintiff had x-rays on his right hand and wrist. The x-rays revealed that the component bones of the wrist appeared intact without fracture or dislocation. There was an incidental finding of fracture involving the base of the fifth metacarpal. There was some callous formation at the fracture site and the fracture fragments appeared separated. The osseous structures of the hand were otherwise grossly intact. The impression was that the hand x-ray revealed a healing intra-articular fracture at the base of the fifth metacarpal.

On January 6, 2010, Dr. Michael Hakala examined plaintiff regarding his complaints that his right hand was swollen. Plaintiff explained he had been in a fight in November and after the fight his right hand swelled. Dr. Hakala's assessment was a fracture at the base of the fourth metacarpal on the right hand. Dr. Hakala's plan was to prescribe Naproxen 500mg tablets for the pain and to request an orthopedic consultation. Dr. Hakala requested the referral because plaintiff had pain in his right hand and a weak grip due to the pain. Plaintiff also exhibited limited dorsi and palmar flex because of the pain. Dr. Hakala's referral request was approved on January 6, 2010.

Plaintiff filed a medical service request on January 20, 2010 regarding questions about his medications. On January 21, 2010, in response to his medical service request, plaintiff saw Nurse Terry Mitchell. At the appointment, plaintiff complained that his right hand was still swollen and hurt and that he had an x-ray and the doctor stated his hand was broken. Plaintiff further complained that the medication he was taking for the pain was not working and wanted different pain medication. Plaintiff described the pain as a 7 or 8 out of a 1-10 pain scale. Nurse Mitchell noted that he had an edema to the

5

outer part of his hand, generally the palm area. Nurse Mitchell's plan was to refer plaintiff to the doctor for examination.

On January 22, 2010, plaintiff saw Dr. Flood for his orthopedic consultation. Plaintiff complained that he had pain in his hand with decreased ability for grip strength and use of his hand. Dr. Flood's assessment was plaintiff had right hand fifth metacarpal fracture at the base and decreased grip strength. After discussion of various treatment options, plaintiff chose to proceed with open reduction internal fixation of the malunion. Dr. Flood recommended immediate surgery. Dr. Flood reported his recommendation to Dr. Hakala on January 25, 2010.

On January 28, 2010, Dr. Hakala requested a referral to Dr. Flood for an open reduction internal fixation surgery for the fracture in his hand. The referral was approved on January 29, 2010. On February 4, 2010, Dr. Flood performed an open reduction internal fixation of the right fifth metacarpal on plaintiff's right hand.

## IV. Discussion

Plaintiff claims that defendant Martinez was deliberately indifferent to his serious medical needs based on the delay in treatment for his broken hand. In support of his claim against defendant Martinez, plaintiff makes the following specific allegations:

(1) On December 7, 2009, Martinez was the health service administrator;

(2) On December 7, 2009, when Martinez reviewed plaintiff's medical service request she could have examined plaintiff's hand herself or arranged for plaintiff to be x-rayed or for him to be examined by a physician. Instead, she referred plaintiff to a nurse service call.

6

(3) Martinez was the supervisor for Nurse Dodge, Ulmer, Gibson and Kasting.

In response, defendant Martinez maintains that there is no evidence that she was deliberately indifferent to a serious medical need or that any delay in treatment of plaintiff's fractured hand caused or had a detrimental effect. Further, defendant claims that the medical records and undisputed facts demonstrate that plaintiff was provided with appropriate medical care for his injured hand. For these reasons, defendant argues that she is entitled to judgment as a matter of law in her favor.

Plaintiff appears to be alleging liability against defendant Martinez based on her alleged position as a nurse supervisor and based on her own actions or inactions. It is well-settled that there is no respondeat superior liability under § 1983. *Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir. 1995) ("A supervisor cannot be held liable, on a theory of respondeat superior, for an employee's unconstitutional actions."). Rather, a supervisor incurs liability only when "the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation." *Id.* In particular, the plaintiff must show that the supervisor knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye to it. *Id.*

Deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "'Serious medical need' has been defined as a medical need which 'has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995) (quoting

*Johnson v. Busby,* 953 F.2d 349, 351 (8th Cir. 1991); *see also Simmons v. Cook*, 154 F.3d. 805, 807-08 (8th Cir. 1997) (quoting *Moore v. Jackson*, 123 F.3d. 1082, 1086 (8th Cir. 1997) ("A medical need is serious if it is obvious to the layperson or supported by medical evidence.")). "To show deliberate indifference, [a plaintiff ] must prove an objectively serious medical need and that prison officers knew of the need but deliberately disregarded it." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). "The subjective inquiry must show a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Id.* (citing *Olson v. Bloomberg,* 339 F.3d 730, 736 (8th Cir. 2003)). "Knowledge of risk may be inferred from the record." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). "The inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Nelson v. Shuffman*, 603 F.3d 439, 448 (8th Cir. 2010).

"Intentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed." *Gordon*, 454 F.3d at 862 (citing *Plemmons v. Roberts,* 439 F.3d 818, 823 (8th Cir. 2006)). When an "inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, 'the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). "To establish this effect, the inmate 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical

8

treatment to succeed." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997). Additionally, the Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish. *See Jenkins v. City of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009).

The undisputed facts show that plaintiff had a fracture in his right hand. The Eighth Circuit has held that a fractured hand is a serious medical condition. *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *see also McCranie v. Larkins*, 4:10CV312 CAS, 2012 WL 871824, at *6 (E.D. Mo. March 14, 2012). Therefore, the Court finds that plaintiff has presented evidence of a serious medical condition. However, there is no evidence of deliberate indifference to plaintiff's condition by the defendant.

The facts of this case are indistinguishable from the facts in *Johnson v. Hamilton*. *Johnson* also involved a fractured hand and an alleged delay in treatment involving an x-ray and surgery. *Johnson*, 452 F.3d at 971. There, the plaintiff was involved in an altercation with corrections officers. *Id.* After the altercation, the plaintiff was examined by a nurse and was treated for skin abrasions. *Id.* Six days later, the plaintiff submitted his first medical service request complaining of pain in his hand and neck and requesting x-rays of those areas. *Id.* Eleven days after the altercation, he was examined by a different nurse, who gave him Ibuprofen and referred him to a physician. *Id.* The plaintiff testified that at the time, the nurse told him that it was likely his finger was fractured. *Id.* Approximately one month later, the plaintiff submitted another medical service request and was seen the same day by a physician, who ordered an x-ray and prescribed additional pain medication. *Id.* An x-ray of the hand was not taken until two months after

9

the injury, and more than a month after the nurse expressed the belief that she thought the finger was broken. *Id.* The x-ray revealed a fracture in one of plaintiff's finger. *Id.* Based on these facts, the Eighth Circuit concluded that the medical defendants were entitled to judgment as a matter of law, because the plaintiff "has presented no evidence that the medical personnel deliberately disregarded [serious medical] needs." *Id.* at 973. Further, the Court held that plaintiff "has presented no evidence [ ] that [the] delay was the result of anything other than negligence." *Id.* And "[m]ere negligence does not rise to a constitutional violation." *Id.* (citing *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

Here, the undisputed facts show that plaintiff was examined by a nurse after the altercation, his hand was examined at a subsequent nurse encounter, and he was given pain medication for his complaints of pain. Subsequently, plaintiff's hand was x-rayed at his request. The x-ray revealed a fracture and surgery was performed on his hand by an orthopedic specialist. There is no evidence that any delay in treatment of plaintiff's fractured hand caused or had a detrimental effect. Finding *Johnson* to be controlling, this Court finds that there is no evidence that the medical defendant deliberately disregarded plaintiff's serious medical needs. *See also McCranie-El v. Larkins*, 4:10CV312 CAS, 2012 WL 871824 (E.D. Mo. March 14, 2012) (finding *Johnson* to be controlling on plaintiff's claim of delay in diagnosis and treatment of hand injury and granting summary judgment in favor of medical defendants). As a result, defendant Martinez is entitled to judgment as a matter of law with regard to plaintiff's claim that she delayed or failed to

provide medical treatment for his injured hand.

## V. Conclusion

In sum, this Court finds that defendant Martinez has shown that she is entitled to summary judgment as to plaintiff's claim against her. Plaintiff has not established that defendant was deliberately indifferent to his serious medical needs or that any delay in treatment caused or had a detrimental effect. Plaintiff was provided with treatment for the fracture in his hand and any delay in that treatment does not rise to the level of deliberate indifference.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Tammi Martinez's motion for summary judgment (ECF #92) is **GRANTED**. A separate Judgment will accompany this Memorandum and Order.

Dated this 21st day of July, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE